The argument this morning is Reilly v. Continental Casualty Company. Mr. Lapp. Good morning, Your Honor. May it please the Court. I represent CNA, the planned administrator, in this appeal from Judge Ellis' decision in the District Court. We're here because we believe the District Court was mistaken, got the ultimate analysis wrong, and that judgment should be entered on CNA's behalf, or, at the very least, if a remand is necessary to supplement the record, that a remand be to the planned committee, rather than judgment be entered for plaintiff. Does the record contain a calculation, a spreadsheet, a table of some kind showing how Continental calculated the monthly benefit? The record does contain, as an attachment to the October 22nd denial, a table that does display the difference between the corrected calculation... It displays a table, but it doesn't show where the numbers that Continental thought were the right numbers came from, how they had been computed, right? And all Continental said was this nonsense term, benefit salary, that doesn't have anything to... any connection to the plan. So what you'd expect is that Continental would put into evidence a table showing, under the plan, we count up wages, we count incentive payments, we count this, we count that. We add them all up, we get this, and it follows that the benefit is that. Is such a document extant? That document doesn't exist in that form, but it's implicit in the documents that do exist. It is not implicit in the table Continental presented, because the table Continental presented gives no clue where the numbers came from. It's simply our assertion, rather than showing their derivation. With respect, you have to start the analysis from the interpretation of what is included as compensation under the plan. Benefit salary was improperly included. Benefit salary is not a term relevant under the plan. The question, you would think, is not what's the wrong basis, but what's the right basis? So you add up the things that matter under the plan, right? The salary, the incentive compensation, right? Do that. Then you can get a figure on which the benefits, the monthly benefit is based. But you tell me that the record doesn't contain any such document. Well, not in the form that your Honor has described, but what it does contain is, again, you go from the premise that benefit salary does not count as something that's- Benefit salary is a complete gibberish term. It is not defined in the plan. It is of no relevance. The more you say that phrase, the more it becomes clear that no competent calculation has been made by your client. The administrator's burden was to identify the reason for his decision. It was not to provide an underlying calculation. And I respectfully submit that one can derive that calculation by simply understanding- No, if you think that, you lose. It's all that simple. The concept of the before-after demonstrates that something was subtracted from the calculation. That's the benefit salary that was- The thing that was subtracted came right out of the poem Jabberwocky, right? You might as well have said, we're reducing your compensation because twas brillig in the slithy tobe, did gyre and gimble in the wabe, therefore $4,200 a month. That would be equally effective at explaining the decision. And the burden on the administrator was to identify the reason. It identified the reason- That's not a reason. Giving a gibberish term, an undefined term, is not a reason. With respect, the administrator did define the term. The term was that that was a concept developed to create life insurance and disability insurance that was stated explicitly in the October 22 denial letter. That was sufficient information, according to this court in the Gallo case, to provide plaintiff enough to mount his challenge to what the decision was. And the challenge that was mounted was to simply focus on, for 13 years, you had told me my benefit was going to be $5,200, $5,300, and now you've changed it to $4,300. There wasn't a mistake. You can't go back on that. You're a stop from doing it. That was the challenge that was mounted before the administrator. The administrator's explanation sufficiently explained its reason. The plaintiff may not like the reason. It may be that the administrator was called upon to interpret the plan, which it always is required to do, and with the discretion vested in the administrator, it is entitled to deference by this court and by the district court in its decision-making process. If the court doesn't accept that that was a sufficient explanation, I submit on this record it's inappropriate to enter judgment for a plaintiff. That's reserved for the rare case when it is clear that the plaintiff's calculation is correct. Here, there's no evidence that the calculation was correct initially done. In fact, the district court explicitly disavowed any opinion on whether that initial number was right. She simply held, because you had represented it for 13 years, that's the number we're going to go with. The dispute is basically over incentive pay. Is that correct? No, it's over this concept of benefit salary, which is not incentive pay. What is it? Because I couldn't find a definition of benefit salary anywhere. The only time it's really addressed is in the October 22 denial letter where the administrator explains that benefit salary is something that's tied or is created for the purpose of establishing life insurance and disability benefits. Where did they get that? It's not part of the plan. It's not defined. It's not part of the plan, but it doesn't need to be part of the plan because it's excluded from the plan. It's not an input to the retirement action. It's not excluded either. It's just not relevant under the plan. With all respect. The plan has got inclusions, and it's got exclusions. And so you calculate the inclusions, and you calculate the exclusions. You come up with a number. Benefit salary isn't an inclusion, and it's not an exclusion. Just like pay in lieu of vacation wasn't included in Gallo. And just like in Gallo, the court should have said, I leave it to the administrator's discretion to interpret that term. The pay in lieu of vacation makes sense. Benefit salary, what does that mean? Well, there is evidence that it is a non-fictional component. There are documents in the record that do refer to benefit salary existing. And, again, if the court's positive with that term and finds it significant, I submit the right result here is to remand for development of that record because it's clear that's not a fiction, that it does exist, that the administrator identified it, relied it, explained what it was used for. If the court requires one more step to come up with a chart and to tell me what this concept is, easily enough. No, the need is not to tell people what benefit salary is. It's to apply the plan's terms, which call for certain things to be in and certain things to be out. Benefit salary is neither in nor out. Why doesn't the administrator just apply the plan's terms? Because the administrator is. There's no evidence in the record that the administrator did that. Well, there's evidence in the record that there's a concept known as benefit salary. And there's evidence in the record that that's not a properly includable element in a benefit calculation. And just like Gallo, it's up to the administrator to interpret the document and then say it's in what is an inherently complex, difficult task, lengthy document to interpret it, just like courts do every day to interpret statutes and say, well, this is what I have to work for. It's not contained within the four corners of this document. Therefore, it's not included. That's not an irrational decision. Nothing further at this time. I attempted to preserve time. I don't know if I've gone over it. Nothing further at this time unless your honors have questions. Thank you, Mr. Lapp. Mr. Price, I'm going to ask you the same question. Did you apply the plan's terms and calculate what benefit they lead to? Yes. Good morning, Judge Easterbrook. Dirk Price for the plaintiff, Michael Riley, who is with us today. And, yes, you start with CNA's own document that says the pay history of Michael Riley. And it has monthly salary and incentive compensation, both of which are included in the term compensation. That's CNA 047. From that document, you get 46. No, I'm not interested. Their documents seem to be of very little utility. The plan calls for particular things. It calls for looking at the salary. It calls for incentive compensation. Your client presumably knows that because he filed his federal tax returns. Did you come up with a table of, in this year, this month, he got that much, that month he got that much? I add it all up, apply the plan's formula, and here's the monthly benefit. Yes, and CNA gave it to him. No. The document from CNA, we have all agreed, I thought, is very problematic. Did your client ever do, did you ever do what I've just said, start with the underlying salary information? Yes. We have the history of Mr. Riley's compensation. He has that history. His compensation included not just W-2 compensation. Deferred compensation isn't on a W-2. What we got are all the things he was paid and included his incentive compensation. That's in the definition. He put all those numbers together. They match exactly what he was given as the history of his payments of what he was paid, and that generated a highest average monthly compensation number of 31,000. That was what generates the monthly benefit at the end. We can do the math. We can make it true out. Is there a table in the record starting with the plaintiff's own numbers and not starting with CNA's calculations? No, because Mr. Riley agreed with the table as prepared by CNA. That is what he submitted in his appeal. He agreed with the table that CNA thinks is wrong. Yes. So this record does not contain from either the plaintiff or the defendant an independent calculation using the plan's terms? Not true. It does. Look, I've already told you that you can't rely on the CNA calculation. I'm asking if there is an independent calculation using the plaintiff's own numbers, and apparently the answer is no. No, he didn't prepare a separate one. But why can't you rely on 47 and 46 as prepared by CNA? Everybody agreed that it was accurate for 12 years and said this is what generates this benefit. And that included what kind of payments? His monthly salary and his incentive compensation. That's the only columns that are there. And then CNA said we have to subtract something, this magical term called benefit salary, which nobody had ever heard of. And they didn't say it when they told him what his new number was. They waited until their response to the first-level appeal denial. It never showed up anywhere. Their first response was to say, Mr. Riley, your benefits are $0. And when Mr. Riley called, they said, oh, we made a mistake. They're only $4,200. We made a mistake. We have to, it's $4,200. When he contested the calculation, that was his first appeal, in that denial of the first-level appeal, we get the words for the first time ever, oh, we had to subtract benefit salary, and we need to rely on the W-2s of 91 to 95. Well, you cannot make their math match. Mr. Riley submitted the documents CNA prepared because he agrees with them. They are what he agrees, what he expected, what was true for 12 years. Those are reliable. What's not reliable is this $25,047 highest average monthly compensation number that shows up in a couple of other worksheets. Where that $25,000 highest average monthly compensation comes from, that's what cannot be explained. No matter how you run the numbers from the information that's in the record, you can't get there. And they don't explain it. They say it's enough that we came up with it. We knew that we added something in 94 and 95. To your point, Judge Easterbrook, there should have been a column that said, oh, monthly salary, incentive compensation, and in these two years, 94 and 95, here were your benefits salary, if there was such a thing, which should be disregarded under the plan. But there is no such thing, and none of the columns are ever treated any differently. The original history of his pay is reliable. He agrees with it. The fact that he didn't then retype it into a Word document, put his name on the bottom and resubmit it, doesn't change the fact that it's reliable and true information. Whatever else it needs to be, their math needs to true out, and it doesn't. Mr. Riley's math does. The 54, 35, 22 trues out as the benefit from the highest average monthly compensation. And in terms of what we do with this case, all the cases are distinguishable in terms of the ones that say you have to go back to the plan administrator for more. Those are always in cases where it wasn't certain the plaintiff was entitled to a benefit at the time of the original decision. There is no contest that Mr. Riley was entitled to a benefit at the time of the decision. The only issue is whether it's one or the other of the calculations, their magical benefit salary, or the one that was based on true and approved and agreed salary information for more than 12 years. And like in the Shane case that we cited, where it's clear that it's one or the other, the court's free, as the district court did to say, it's the one that's there and it's provable and truable. We have the benefit of math. Riley's case proves out based on uncontested facts about what his pay history was. They agree with it. We agree with it. Now they came up with a magical we had to back something up and never told us where, what years, and how much of each year. That's what's missing. And, you know, Judge Ripple, you win the award for being on almost all the cases cited in here for the standard. You're on all of them, Carr, Fry, you name it. But we're not contesting the standard. We're contesting the facts of the record. Yes, they get deference if there's a reasonable, plausible explanation, and there isn't one for this gibberish term, benefit salary. We needed to subtract something, they say, but never told us when, and they didn't tell us they were doing it until well into the appeal. But now, and this is why we cited the trial from Kafka, we are held to be accountable at our original appeal for knowing that they were going to come up with this term in their subsequent denial. I don't know how that's even possible. But that's what they're asking the court to find. So what is it that CNA subtracted? Until you can answer that question, and you can't, then it cannot be sustained. The plan administrator's decision has to be overturned, and it needs to be enforced for what everybody agrees is the correct math once you agree on that pay history. That's all it says. The pay history of Michael Riley, incentive compensation, and monthly salary. They prepared it. If they had got a benefit salary column, they should have had it, but they didn't. Mr. Riley agrees with it. That is an uncontested material fact in the record that everybody can buy on. Again, just because he didn't type it into a Word document doesn't mean it's not reliable. The problem is that CNA thinks that it's a bogus number. The 4200 is, and the 25,000 average monthly compensation is, but not the original highest average monthly compensation. That's been true for 12 years and is agreed upon by everybody using those numbers. It's only when you subtract a mysterious benefit salary that you get a different highest average monthly compensation and a lower benefit. Everybody was good. Everybody was good until that point. Then this mystery term arrived and a mystery subtraction, which has never been detailed in any of the math. You can't do it. You can't follow their math and come up with this number. I've tried it every different way. Trying to put Nancy Perry's statements about using W-2s from 91 to 95 can't be done. Using 96 and only changing 94 and 95 can't be done. But if you stick with the original pay history that Mr. Riley agreed with and submitted in his appeal, saying this is my pay history, he made that affirmative statement. The fact that he didn't type it is immaterial. He agreed with it, submitted it on his appeal, and said the calculation you've made is incorrect. We now know what the correct calculation ought to be. It's the one it always was, 54, 35, 22. Nancy Perry agrees that given the original pay history that they supplied, that's the correct number. The only issue is whether or not they're entitled, as the plan administrator, to invent a term that they knew secretly only unto themselves and then subtract that from what was otherwise an agreed pay history. And they're not. And for that reason, we think that Judge Ellis should be affirmed and that the original calculation, 54, 35, 22 of his benefit, should be reinstated, just as in the Shane case. There's no reason to go back for any more mystery terms or new calculations or recalculations when they've never been identified in the plan or anyplace else. Thank you. Thank you, counsel. Anything further, Mr. Lapp? Going back to the rationale that was provided for denying the benefit, that was sufficient to put Mr. Riley and his counsel on notice of what the decision was. The forthcoming was nothing in terms of a calculation chart that the kind that the court has described. Instead, it was purely a promissory establishment argument. There was no alternative calculation, no contested calculation provided demonstrating that CNA's numbers were wrong in any way. There was no evidence provided that Mr. Riley had been paid something called a benefit salary. The plan does, when it talks about what's included in compensation as an input, it is regular salary. That is the defining term, and then it goes on to have included elements, not one of which is benefit salary, by the way. If you take a look at record 580 through 632 and 642 through 669, you will see the response from Mr. Riley to the plan committee where there is nothing mentioned about an alternative. Much ado has been made about the terms benefit salary here. A remand can easily solve that matter, but there is a document going back to 1999 that uses the term, and at the very least we can infer that it's not fictitious. The implication from plaintiff and the implication from the district court's rationale is that that term was made up, it's not speculative, it was made up in some sort of unexplained way to take something away from Mr. Riley. That doesn't give the presumption to the plan administrator that ERISA provides or this court's cases or the Supreme Court case provides administrators when making decisions. Thank you. Thank you very much. The case is taken under advisement.